```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY R. MONTGOMERY           :    CIVIL ACTION
                                :
          v.                    :
                                :
HOFFMANN-LA ROCHE, INC. et al.: :    NO. 12-3163
```

<u>MEMORANDUM</u>

McLaughlin, J.                                      July 23, 2012

      This action arises out of the plaintiff's alleged injuries following ingestion of the prescription drug, Accutane. Defendants Hoffmann-La Roche, Inc. and Roche Laboratories, Inc. (collectively, the "Roche Defendants") removed this case from state court on the basis that non-diverse defendant Wolters Kluwer Health, Inc. ("Wolters") was fraudulently joined. The plaintiff moves to remand on the basis that removal was premature and that the defendants have not met their burden to show that joinder was fraudulent. The Court will grant the motion.

I.    <u>Factual & Procedural Background</u>

      On June 15, 2011, the Court of Common Pleas of Philadelphia County established a mass tort litigation docket for cases involving the Accutane drug. Case management orders are entered in every mass tort litigation program to set the governing filing, motion, and discovery procedures and deadlines. <u>See</u> ECF No. 18-1.

1

The plaintiff, Anthony R. Montgomery, initiated this action as part of that mass tort litigation program by filing a writ of summons against Wolters on November 4, 2011. On November 18, 2011, the plaintiff filed a praecipe to reissue the writ of summons and add additional defendants. The reissued writ of summons named the Roche Defendants as well as Wolters. The writ informed the defendants that an action had been commenced against them under the court's mass tort program and referenced the Accutane drug. Praecipe to Issue Writ (ECF No. 1-3); Praecipe to Reissue Writ (ECF No. 1-5).

Pursuant to Case Management Order No. 1 in the Accutane Mass Tort Program, plaintiffs' counsel in the Accutane cases collectively filed a Master Long Form Complaint on December 1, 2011. That master complaint superceded all complaints filed previously and set forth the facts and legal contentions that govern all cases filed or that will be filed in the program. Case Management Order No. 1 ¶ III.A.1 (ECF No. 18-2).

The Master Long Form Complaint alleges the following with respect to defendant Wolters: Wolters was in the business of creating and marketing prescription drug information, warnings, and patient education monographs ("PEMs") intended to be provided to consumers by their pharmacists for the purpose of informing them about risks and side effects of drugs. Wolters promotes itself as an unbiased supplier of up-to-date scientific drug

information, and claims that its PEMs are comprehensive.  At the time the plaintiff filled his prescription for Accutane, he was provided a PEM containing information and warnings about the Accutane drug.  The substance of the PEM provided to the plaintiff was "authored, analyzed, prepared, created, compiled, edited, evaluated, drafted, designed, distributed and supplied, directly or indirectly, by Wolters Kluwer."  Master Long Form Complaint ¶¶ 32, 33 (ECF No. 18-3).  Wolters contracted with pharmacies to provide PEMs regarding Accutane.  The Accutane PEMs prepared by Wolters failed to warn patients about the full risks of taking the drug.  Id. ¶¶ 15, 28, 29, 32, 34.

The Case Management Order also states that each plaintiff in an Accutane case shall file a Short Form Complaint within thirty days after the filing of a Master Answer to the Master Long Form Complaint or court approval of a Short Form Complaint, whichever is later.  That Short Form Complaint must indicate which allegations and counts of the Master Long Form Complaint are incorporated by reference, and may allege additional causes of action and specific facts in support thereof.  Case Management Order No. 1 ¶ III.A.3 (ECF No. 18-2); see also Short Form Complaint for Accutane Litig. ¶ 13 (ECF No. 18-4) (permitting plaintiff to assert additional facts and theories of recovery).

In May 2012, the plaintiff served the defendants with a

completed Plaintiff's Fact Sheet ("PFS") in accordance with the time frame set forth in Case Management Order No. 3. Under the terms of that order, a completed PFS is treated the same as interrogatory answers and responses to requests for production under the Pennsylvania Rules of Civil Procedure. Case Management Order No. 3 ¶ III.A.2 (ECF No. 18-6). This plaintiff's PFS stated that he ingested Accutane from spring 2000 through summer 2001. He also listed the pharmacies where he filled his prescription for Accutane. Plaintiff's Fact Sheet 6, 8 (ECF No. 18-5).

On June 4, 2012, after the Master Long Form Complaint and the plaintiff's PFS had been filed, but before the plaintiff filed a Short Form Complaint, the Roche Defendants filed their notice of removal. The Roche Defendants premised subject-matter jurisdiction on diversity of citizenship, alleging that joinder of non-diverse forum defendant Wolters was fraudulent. The plaintiff subsequently moved to remand.

II. Analysis

As a preliminary matter, the Court considers and rejects the plaintiff's contention that removal is procedurally improper in every case where only a writ of summons and no complaint has been filed. The Court of Appeals for the Third Circuit has held that a writ of summons alone is not an "initial

pleading" that triggers the removal period under 28 U.S.C. § 1446(b). <u>Sikirica v. Nationwide Ins. Co.</u>, 416 F.3d 214, 222-23 (3d Cir. 2005). Indeed, courts generally remand cases where a writ of summons but no complaint has been filed. <u>See, e.g.</u>, <u>Campbell v. Oxford Elecs., Inc.</u>, No. 07-0541, 2007 WL 2011484 (E.D. Pa. July 5, 2007). However, this case differs from a case in which the only filing at the time of removal is a writ of summons that contains the names of the parties and notice that an action has been commenced. The procedures of the Accutane Mass Tort Program which govern this case - and, in particular, the filing of a detailed Master Long Form Complaint and the plaintiff's PFS prior to removal - require a more nuanced analysis.

There may be cases where a Master Long Form Complaint, combined with the facts provided in a plaintiff's PFS, contain allegations sufficient to permit removal even in the absence of a Short Form Complaint. The allegations here, however, do not present such a case.

The Roche Defendants argue that joinder of Wolters was fraudulent because the plaintiff's ingestion of Accutane from spring 2000 through summer 2001 predates Wolters's acquisition of Medi-Span, the company that provided the PEMs at issue, and because the plaintiff has failed to plead any facts or theories supporting successor liability for Wolters. Defs.' Opp. to

5

Remand 4.  However, under the strict standard set forth in <u>In re Briscoe</u>, 448 F.3d 201 (3d Cir. 2006), the Court cannot find joinder fraudulent at this time because the defendants' argument requires the Court to reject the factual allegation in the Master Long Form Complaint that Wolters prepared the Accutane PEMs.

Joinder is fraudulent when there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention to prosecute the action against that defendant.  But if there is even a possibility that a state court would find a complaint states a cause of action against any resident defendant, then the federal court must find joinder proper and remand the case to state court.  <u>In re Briscoe</u>, 448 F.3d at 217.  Courts must be wary about converting a jurisdictional inquiry into an inquiry on the merits.  <u>See</u> <u>id</u>. at 218.

In evaluating the alleged fraud, courts must focus on the plaintiff's complaint at the time the notice of removal was filed, and take the facts plead in the complaint as true.  <u>Id</u>. at 217.  However, courts are permitted to look to more than just the pleading allegations for indicia of fraudulent joinder, so long as the look outside the pleadings does not cross the line between a proper threshold jurisdictional inquiry and an improper decision on the merits.  <u>Id</u>. at 219.  For example, in <u>Briscoe</u>, the Third Circuit allowed the lower court to look at evidence

that was established in prior judicial proceedings and facts subject to judicial notice to determine that the limitations period on a claim had run. Id. at 220.

In this case, the plaintiff has alleged, and the Court must accept as true under Briscoe, that Wolters was in the PEM business, and that Wolters authored, prepared, and distributed the Accutane PEM that the plaintiff received when filling his prescription. See Master Long Form Complaint ¶¶ 15, 28, 29, 32, 34. There are no facts plead in the Master Long Form Complaint or in the plaintiff's PFS indicating that Medi-Span published the PEMs, or that otherwise address the timing of when Wolters was responsible for authoring and distributing the PEMs. The only reference to Medi-Span is in paragraph 33 of the Master Long Form Complaint, which quotes from what the plaintiffs call the "Wolters Kluwer MediSpan product webpage." That website quote indicates that Medi-Span is "a part of Wolters Kluwer Health" and contains representations about the reliability of Medi-Span's drug databases. Id. ¶ 33. However, there is no indication that Medi-Span produced the Accutane PEMs or that Medi-Span was previously owned by another company; nor are there any facts that raise the question of whether there is successor liability or otherwise go to the issue of successor liability.

According to the defendants, Medi-Span provided the Accutane PEMs at issue, and non-party company First DataBank

owned Medi-Span during the period when the plaintiff ingested Accutane.  First DataBank reached a consent agreement with the Federal Trade Commission in connection with antitrust litigation to divest the assets of the Medi-Span business in December 2001 to a company for which Wolters is the parent.  See Final Order & Stip. Injunction (Wolters' Mot. to Dismiss, Ex. B) (ECF No. 14-2).  For confidentiality reasons, the defendants have not yet produced a copy of the asset purchase agreement, though counsel for defendant Wolters indicated willingness to do so under a protective order.  Counsel for Wolters also represented to the Court that there is no basis for successor liability under the agreement, which was merely an asset sale, and that documents supporting Wolters's position are readily available on the Internet.[1]  7/11/12 Tr. of Oral Argument 12, 38, 42.

  The defendants' fraudulent joinder argument would require this Court to accept that Medi-Span - not Wolters, as pleaded - provided the PEMs in question to the plaintiff; that it did so before its acquisition by Wolters; and that there is no possibility of successor liability for Wolters.  At this stage, the Court cannot make such a determination because the Court is bound by Briscoe.  Although the Court may look outside the allegations for indicia of fraudulent joinder, the limited look

---

[1] According to counsel for Wolters, First DataBank remains an active company in the PEM business.  7/11/12 Tr. of Oral Argument 12.

does not permit the defendants to obtain a merits determination at the jurisdictional inquiry stage. See Briscoe, 448 F.3d at 219. Under Briscoe, the Court cannot go so far beyond the pleadings to review evidence regarding which company provided the Accutane PEMs or to decide the merits of any successor liability theory.

Nevertheless, the Court expresses concern that at oral argument, plaintiff's counsel was unable to articulate any basis for successor liability for Wolters despite repeatedly claiming that the plaintiff would allege successor liability in his Short Form Complaint and had a basis for doing so.[2] See 7/11/12 Tr. of Oral Argument 36, 38, 39-40, 58-60. Plaintiff's counsel maintained that some basic research formed the basis of the plaintiff's successor liability theory, but could not specify or recall what that research consisted of when questioned by the Court. See id. at 40, 60.

It may be that the defendants could eventually remove on the basis of fraudulent joinder when the plaintiff files his Short Form Complaint. The plaintiff's counsel is on notice of the alleged circumstances concerning the forced asset sale of Medi-Span to Wolters, and counsel for Wolters has offered to

---

[2] Both the federal and Pennsylvania rules of civil procedure impose a duty on attorneys to conduct a reasonable inquiry under the circumstances prior to bringing an action. See Fed. Rule Civ. P. 11(b); Pa. Rule Civ. P. 1023.1(c).

does not permit the defendants to obtain a merits determination at the jurisdictional inquiry stage. See Briscoe, 448 F.3d at 219. Under Briscoe, the Court cannot go so far beyond the pleadings to review evidence regarding which company provided the Accutane PEMs or to decide the merits of any successor liability theory.

Nevertheless, the Court expresses concern that at oral argument, plaintiff's counsel was unable to articulate any basis for successor liability for Wolters despite repeatedly claiming that the plaintiff would allege successor liability in his Short Form Complaint and had a basis for doing so.[2] See 7/11/12 Tr. of Oral Argument 36, 38, 39-40, 58-60. Plaintiff's counsel maintained that some basic research formed the basis of the plaintiff's successor liability theory, but could not specify or recall what that research consisted of when questioned by the Court. See id. at 40, 60.

It may be that the defendants could eventually remove on the basis of fraudulent joinder when the plaintiff files his Short Form Complaint. The plaintiff's counsel is on notice of the alleged circumstances concerning the forced asset sale of Medi-Span to Wolters, and counsel for Wolters has offered to

---

[2] Both the federal and Pennsylvania rules of civil procedure impose a duty on attorneys to conduct a reasonable inquiry under the circumstances prior to bringing an action. See Fed. Rule Civ. P. 11(b); Pa. Rule Civ. P. 1023.1(c).

produce the asset purchase agreement under a protective order. The Court is sympathetic to the defendants' argument that the plaintiff may later argue that removal is improper under the one-year limit on removal under 28 U.S.C. § 1446.[3]  The defendants may not be able to force the filing of the Short Form Complaint given the Accutane Case Management Order, which sets the deadline for filing the short form complaint as within thirty days after the filing of a Master Answer or court approval of a Short Form Complaint, whichever is later.  Case Management Order No. 1 ¶ III.A.3 (ECF No. 18-2).  Nevertheless, since the facts alleged and the procedural posture do not present the question, the Court does not now consider whether the one-year limit would bar removal.

       An appropriate order follows.

---

[3] Section 1446(c) provides that a case may not be removed on the basis of diversity jurisdiction "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  The bad faith exception was added to the removal statute by the Federal Courts Jurisdiction & Venue Clarification Act of 2011.  Pub. L. No. 112-63 § 105, 125 Stat. 758 (2011).  That amendment only applies to actions commenced on or after January 7, 2012.  The Court does not now decide which version of the removal statute would apply to this case.